(Nos. 26962, 26963.—Judgments affirmed.)
BLACK HAWK MOTOR TRANSIT COMPANY, Appellant, *vs.*
THE ILLINOIS COMMERCE COMMISSION *et al.*—(ILLI-
NOIS HIGHWAY TRANSPORTATION COMPANY, Appellee.)

*Opinion filed March 16, 1943—Rehearing denied May 14, 1943.*

THOMAS P. SINNETT, and REYNOLDS M. EVERETT, for appellant.

GEORGE Z. BARNES, and HAROLD M. OLSEN, for appellee.

GEORGE F. BARRETT, Attorney General, (WILLIAM C. WINES, of counsel,) for the Commerce Commission.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

On October 31, 1940, appellee, Illinois Highway Transportation Company, filed an application with the Illinois Commerce Commission for a certificate of convenience and necessity to extend its operations as a motor carrier between Peoria and Decatur along State Route 29 through East Peoria, Creve Coeur, Pekin, and Green Valley, to that route's junction with route 122, thence along route 122 through Delavan to the junction with route 121, thence on route 121 to Emden Junction, Hartsburg, Lincoln, Maple Grove, Mt. Pulaski, Latham, and Warrensburg, to the junction with U. S. route 51 and thence to Decatur. The permit to extend this service was requested subject to the restrictions that no local business would be accepted within the corporate limits of Peoria, East Peoria and Decatur; that no passengers would be carried whose point of origin is Peoria or Pekin and whose destination is South Pekin, Green Valley and a point known as the junction of routes 29 and 122; that no one would be carried from said junction point, Green Valley, South Pekin, Creve Coeur, East Peoria or Peoria; that no through passenger service would be rendered between Peoria and Decatur and *vice versa;* and that no through service from Lincoln to Peoria and *vice versa* would be rendered. The petition gave the name of appellant, Black Hawk Motor Transit Company, and others as public utilities now engaged in rendering service along said route or between cities or some of them, and they were all made respondents and served with notice of the application. A hearing on the application was opened before an examiner of the commission on November 19, 1940, with no answers to the petition filed. At the hearing, the Illinois Terminal Railroad Company, the Bartonville Bus Lines, Inc., and the Black Hawk Motor Transit Company appeared by their respective attorneys. Counsel for

Black Hawk moved to dismiss the petition of the Highway Transportation Company for insufficiencies appearing on its face. The motion was denied and the examiner suggested that when the Black Hawk's petition (hereinafter mentioned) came on for hearing counsel could make a motion to consolidate. The examiner also stated that he did not believe the commission would take any action until the commission had both matters before it. Counsel for Black Hawk reserved the right to move to dismiss the Highway Transportation Company's petition when the Black Hawk petition came on for hearing.

On November 13, 1940, six days prior to the above hearing, the Black Hawk filed an application for a certificate to operate a similar service between Peoria, Pekin, Morton, Delavan and Decatur and intermediate points, extending its present operation from the junction of routes 29 and 122, and from Peoria, leaving that city on route 150, going thence to East Peoria to the junction of routes 150 and 29, thence on 29 to East Peoria, Creve Coeur, Pekin and Green Valley, and the junction with route 122, thence on route 122 to Delavan and on to the junction with route 121, thence on route 121 to Emden Junction, thence on spur to Emden and back to route 121 and thence on route 121 through Lincoln to Decatur. The petition requested an alternate route leaving Peoria on route 150, to Morton, by way of Highway Village, Cloverdale, Pleasant Hill, and Gardena; from Morton on route 121 to Emden Junction, thence on spur to Emden and return to route 121, thence to Lincoln by way of Hartsburg, and from Lincoln to Decatur on route 121, by way of Mt. Pulaski, Latham, Heman and Warrensburg, and returning by reversed routing. The Highway Transportation Company and other utilities were made respondents. No restrictions were included in the petition, except that the Black Hawk did not propose to render any local service within the corporate limits of Peoria, East Peoria, Pekin or Decatur, nor any

local service between Peoria and East Peoria, nor between Peoria and Pekin and intermediate points. The alternate route was later abandoned at the hearing, by stipulation.

None of the respondents filed answer to the petition but the Brotherhood of Railroad Trainmen filed an intervening petition as it did also in the Highway Transportation Company's application, in which it was averred that public convenience and necessity did not require the proposed extension of the said services. A hearing on the petition of the Black Hawk Company came on for hearing on December 3, 1940, at which time proof of jurisdictional matters was made and then an amendment was suggested changing the proposed route through some of the city streets to meet the objections of the city of Lincoln. This, it was thought, would have necessitated a continuance for another publication service which threw the next hearing over to January 3, 1941. The examiner stated that this did not mean that the original setting of the hearing on the Highway Transportation Company's application would be continued unless the two cases were later consolidated by the commission.

On December 5, 1940, the hearing on the Highway Transportation Company's application was resumed. A motion by counsel for the Black Hawk to dismiss the petition of the Highway Transportation Company was denied. After proofs were in, the case was announced closed by the petitioner. Counsel for appellant then renewed his motion to consolidate the two cases and that the evidence taken in each be considered in both cases. Counsel for appellee recalled a witness for further examination and at its conclusion counsel for appellant again insisted on his motion to consolidate and to integrate the evidence in both cases. It was insisted that the commission could not grant an order in one case without considering the order to be granted in the other proceeding. The examiner conceded the point and said he thought, "there will be no order

entered in either case until both cases are concluded." The Illinois Terminal Railroad Company objected to the consolidation, on the ground that it was not objecting to the application of appellee for the reason that the restrictions were included in its proposed service, but was objecting to that of appellant and there might be some evidence in the former that would be detrimental to the Terminal Company in its opposition to appellant's application. The Brotherhood of Railroad Trainmen registered a like objection to the consolidation. It is apparent that if the cases were consolidated and the evidence integrated, the testimony of the witnesses as to the public convenience and necessity and the requirement for the restricted service of the Highway Transportation Company would be considered in connection with the service proposed by the Black Hawk, which, on account of a dissimilar line of restrictions, might have a bearing on the question of competition to the Illinois·Terminal which was already operating the through service from Peoria to Decatur through Lincoln.

The motion to consolidate was taken under advisement on December 5. On the same day, the hearing on the application of appellant was held before the same examiner. On December 11 the commission denied the motion to consolidate, and the motion of counsel for appellant to dismiss the application of appellee was also denied.

It appears from the record that appellant's proposed service was not restricted as to through service from Peoria to Decatur and by reverse routing, although appellant's counsel agreed during the hearing that the commission might incorporate such a restriction in the certificate if one be issued to appellant. The proof also shows that appellant's proposed operation was to have a bus from Springfield to Peoria make a direct connection with one of its busses from Decatur at the junction of routes 29 and 122, where passengers could change from one bus to another. Counsel for the Illinois Terminal expressed a fear that ap-

pellant's plan might be to sell a ticket from Peoria to the junction and there sell a ticket from the junction to Decatur and *vice versa,* and thereby get around the through-service restriction. Appellant's manager stated that there was no such intention but he was not free from some evasion on the question. The examiner pointed out that no such evasion could be worked under the certificate to appellee because under its proposed operation, if it sold a ticket at Decatur to the junction, it could not sell another to Peoria because it would be restricted from the junction to Peoria and intermediate points. This major difference in the restrictions obviously caused the examiner and the commission to refuse the consolidation so persistently urged by counsel for appellant.

On December 18, appellant's case was set for hearing on January 3, 1941, and additional evidence was taken in the application of appellee. This testimony was devoted largely to the financial ability of the petitioner to render the service and the nature of its equipment, and counsel for appellant cross-examined the witnesses without any undue restrictions. The case was then taken under advisement but not continued to any definite date.

On January 3, 1941, the petition of appellant came on for hearing and a considerable portion of the record is devoted to conversations, about the various points involved, between the examiner and counsel for appellant. After stipulating to eliminate from the order any authorization for through service between Peoria and Decatur and Peoria and Lincoln, testimony was heard on the question of convenience and necessity and the ability of appellant to adequately render such service. At that hearing counsel for appellant renewed his motion to consolidate, but a little later withdrew it. The examiner stated, "if you come in the next time and finish your case there will be nothing gained or lost if they are consolidated or not." The case was continued to January 21, 1941.

On January 8, 1941, the commission entered an order in appellee's proceeding finding that public convenience and necessity require the proposed service subject to the specific restrictions incorporated in the order, and that the applicant has the necessary equipment, facilities, organization and financial resources to render such services, and ordered the issuance of a certificate to appellee with the further order that it should begin operations within thirty days from the date of service of said order.

On January 22, 1941, there was a further hearing on appellant's petition. Counsel for appellee made a motion to dismiss the application of appellant for the reason that an order had already been granted to appellee involving substantially the same route. That motion was denied, evidence was heard and the matter continued.

The case involving appellant's petition was called on February 19 and again on February 25, but no evidence was taken and the case was continued to March 4. The apparent reason therefor was that on February 6, counsel for appellant filed a petition for rehearing in appellee's case and it was up for hearing on a motion to dismiss the petition for rehearing, which was put over to February 25 for argument. On that date the commission granted the rehearing. When the matter came on for hearing in both cases on March 4, counsel for appellant made a motion that the commission consider the testimony taken in the appellant's case in making its decision in appellee's proceeding, and made a similar motion to integrate the evidence in appellee's case in considering appellant's application. Ruling on the motions was reserved in both cases. The examiner stated that "as far as considering all the testimony in the two records, the commission will do that anyhow." Petitioners in both cases then offered additional testimony. The testimony in appellant's case was offered to show the ability of that company to adequately serve the public, from the standpoint of its financial ability, its equip-

ment facilities, organization and past experience as a motor transportation operator. None of the testimony tended to show the inability of the Highway Transportation Company to adequately render its proposed service. The evidence offered in the Highway Transportation case was concerning the ability of that company to render adequate service, and the witnesses were permitted, over objection, to testify that the busses now being used on the route are good, seats comfortable and service good, and to give their opinion that the Highway Transportation Company was then giving proper and adequate service. The objection was limited to the one ground that the witnesses could not testify as to those facts because the company had no right to render any service over that route, and the examiner, in overruling the objection, held that such right existed up to the date the rehearing was granted. Counsel for Black Hawk renewed his motion to integrate the evidence in both cases and both were taken under advisement. On March 18, two separate orders were entered by the commission. By one, the commission affirmed its order of January 8, granting a certificate to appellee, and by the other the application of appellant was denied.

A separate appeal was taken by the Black Hawk from each of said orders to the circuit court of Tazewell county, where counsel for appellant filed a written motion, in the appeal from the order granting the certificate, to consolidate the two appeals, which was denied. The circuit court affirmed the commission's orders in both cases and separate appeals were taken and consolidated in this court. The briefs and arguments are identical in both cases and the errors assigned raise the same legal and factual questions.

Appellant's counsel argue that the commission erred in failing to consolidate the cases, thereby denying appellant its constitutional right of its day in court. Appellee's counsel contend that the consolidation of cases is merely for convenience and is not a matter of right and is, there-

fore, not a reviewable question, because the actions of the commission and the trial court were discretionary. Appellant insists that if it be conceded that such actions were discretionary the discretion was abused.

This court is committed to the rule that the refusal to consolidate cases for hearing cannot be assigned as error because it is discretionary with the court in all cases, and unless that discretion is abused this court will not interfere. (*Miles* v. *Danforth,* 37 Ill. 156.) It must be conceded that the power to consolidate cases for hearing is implied, but that the granting or refusing of a motion to consolidate rests within the court's discretion. (*Barnes* v. *Swedish American Nat. Bank,* 371 Ill. 20.) There is no reason why the same rule should not be applied to administrative bodies clothed with *quasi*-judicial functions. The question of abuse of discretion is always open to judicial inquiry on appeal. (*Irmegar* v. *Tazewell County,* 264 Ill. 172.) We think the rule to be applied to hearings before such an administrative body on questions of general procedure, which are not covered by the Public Utility Act nor by rules of the commission, is governed by the test applied in equity cases, which, on matters of consolidation, is that the only inquiry is in respect to the subject matter, and not as to a difference in parties, as in actions at law. (*Woodburn* v. *Woodburn,* 23 Ill. App. 289, reversed on other grounds in 123 Ill. 608.) The refusal to consolidate or to integrate the evidence is subject to review, but only to the extent of determining whether the discretion was abused, and, if abused, whether the result was injurious or prejudicial to appellant's right to a fair and impartial hearing.

Counsel for appellee concede in their brief and argument that if in either proceeding the parties were denied an opportunity to present competent and proper evidence it would require a reversal. Our consideration must therefore be directed to that question.

The motion of appellant to integrate the evidence in both cases was merely another method of working a practical consolidation. There are three forms of consolidation of cases recognized by the authorities: (1) where several cases are pending involving substantially the same subject matter a method of avoiding the trial of each case separately is to stay the proceedings in all but one, the decision in the others to be settled by that reached in the one trial; (2) where several cases involve an inquiry into the same event in its general aspects, the cases may be tried together, but with separate docket entries, verdicts and judgments, the consolidation being limited to a joint trial; and (3) where several actions are pending which might have been made the subject of a single proceeding, the cases, by consolidation, become merged into one in which the rights of the parties are determined. (See *Lumiansky v. Tessier,* 213 Mass. 182, 99 N. E. 1051.) The instant case comes within the second classification above mentioned and our inquiry must be limited to the questions of whether appellant has been prejudiced by the commission's refusal to integrate the evidence and consolidate the hearings on the two applications as a joint proceeding, and whether the refusal to consolidate amounted to an abuse of discretion.

When the applications of both utilities are viewed in connection with all the amendments and consents to restrictions to be included in any certificate issued by the commission, they both cover substantially the same extended service and route. Both parties proved and the commission found that the service petitioned for is required from the standpoint of convenience and necessity. The controlling question in controversy before the commission was which utility was entitled to the certificate, and a determination of that question could only be fairly made from a consideration of all the evidence in both cases and appellant's counsel was led to believe that such would be done. But,

on January 8, 1941, while appellant's proceeding was still pending, the commission entered an order granting a certificate to the appellee. This action demonstrated that the evidence in the two cases was not considered together. The commission, however, acknowledged the error by granting a rehearing, and on March 18, having all the evidence in the two records before it, simultaneously entered an order in each case. It cannot, therefore, be reasonably said it did not consider all the evidence.

The order entered in the Highway Transportation Company proceeding recites that at the March 4 hearing the applicant produced several witnesses who testified to the convenience and adequacy of the service rendered by the applicant pursuant to the order of January 8, and that neither the Illinois Terminal nor the Black Hawk offered any evidence, and the case was taken again for decision. The evidence offered on March 4 was strenuously objected to by appellant's counsel but the objection was limited. No objection was made that the opinion evidence invaded the province of the commission and was beyond the scope of any opinion-evidence rule making such testimony admissible. Insofar as such testimony described the character of the equipment used and other matters concerning the adequacy of the service, it was merely cumulative of previous testimony. The objection on the ground that appellee had no right to render such service and therefore the evidence was inadmissible was properly overruled because the order of January 8 granted lawful permission to operate until it was set aside and a rehearing granted. No cease-and-desist order was asked for nor was any entered. The testimony, insofar as it was limited to facts and not to opinions, being merely cumulative of previous testimony and not unlawful within itself, worked no prejudice to appellant's rights.

The two orders entered by the commission on March 18, 1941, were based upon all the evidence offered in both cases and this court's inquiry is restricted to a determina-

tion of whether there is substantial evidence in both records, considered jointly, to support the commission's findings and orders. The consolidation of the separate appeals in this court justifies a joint consideration of the two cases, for brevity and convenience. *People ex rel. Hempen* v. *Baltimore and Ohio Railroad Co.* 379 Ill. 543.

The primary and controlling point in the controversy is whether the orders of the commission giving preference to one of two competing companies is so unreasonable as to warrant this court in finding that the commission exercised arbitrary powers. It has been held repeatedly that the commission is given no arbitrary powers. (*Public Utilities Com.* v. *Toledo, St. Louis and Western Railroad Co.* 267 Ill. 93; *Chicago Motor Bus Co.* v. *Chicago Stage Co.* 287 Ill. 320.) This court's function is to review the facts upon which the orders were based, and if there is substantial evidence to support them,—not a mere scintilla of proof,—the orders will be sustained. (*Interstate Commerce Com.* v. *Union Pacific Railroad Co.* 222 U. S. 541, 35 S. Ct. 108; *Public Utilities Com.* v. *Terminal Railroad Ass'n,* 281 Ill. 181; *Public Utilities Com.* v. *Chicago and West Towns Railway Co.* 275 Ill. 555; *Chicago Bus Co.* v. *Chi. Stage Co.* 287 Ill. 320.) In the instant cases both applicants were shown to be capable of rendering adequate service of the character proposed along the proposed route and the status of each was the same. Each was already serving a portion of the route between Peoria and Decatur and each had been rendering motor transportation service of the character proposed for a number of years. Appellant has successfully operated a line from Rock Island to Peoria, from Peoria to Freeport and from Peoria to Springfield, and its equipment, organization and financial ability are above question. There is no record evidence to disparage its capacity to render adequate and efficient service and its terminal and ticket-agents facilities are excellent. Appellee has been rendering successfully, a service of the same kind

between Peoria and Pekin since 1927. It has previously rendered service in the territory now in question between Pekin and Decatur, under a certificate granted by the commission in 1933. That service was discontinued after about two years and a half of operation. There is substantial evidence in the records to support the commission's finding that appellee is able to render adequate service along the proposed route, without taking into consideration the evidence heard on March 4 as to the satisfactory character of the service rendered by appellee under the order of January 8.

The commission was confronted with the problem of deciding which of the two competing and capable companies could best serve the public interest without injury to other utilities in the field. Each was asking for permission to extend its existing service and the proof is clear that the one granted a certificate would be benefited, but neither will be subjected to competition by reason of the certificate being granted to the other. Simply because appellant had an operation to the northwest part of the State which would gain by reason of the extension of its service to Decatur, it cannot be said that it will suffer any present traffic loss by reason of the certificate granted to appellee.

Appellee's witnesses, who were selling tickets at Decatur and Lincoln as well as intermediate points, testified that there was a need for the service through Peoria to the northwest part of the State and that if a certificate be issued to appellee, tickets sold from Lincoln and Decatur, and intermediate points, to destinations at the tri-cities and Freeport would route the passengers over appellant's lines from Peoria.

The evidence shows that appellant is in a stronger financial and equipment position than appellee, but it is equally well proved that appellee's financial, equipment and organizational facilities are sufficient for rendering ade-

quate service along the proposed route. While the commission, in pursuance of its policy not to grant certificates to competing lines for the same purpose, (*West Suburban Transportation Co.* v. *Chicago and West Towns Railway Co.* 309 Ill. 87,) was forced to deny one of the applications, in view of its finding that the traffic would not support both, it was authorized to inquire and determine which was capable of best serving the public, (*Chicago Bus Co.* v. *Chi. Stage Co.* 287 Ill. 320,) and whether one or both should be granted a certificate. (*People* v. *City of Chicago,* 349 Ill. 304.) Since both could adequately serve the public needs and the traffic was insufficient for both, other considerations must necessarily control.

Mere priority in time of application for a certificate of convenience and necessity is not, of itself, controlling in such cases, but it is an element to be considered in determining the reasonableness of the order of the commission. (*Chicago Bus Co.* v. *Chi. Stage Co.* 287 Ill. 320.) The reason priority of application should be considered is apparent. If a utility makes no effort to extend its service until a competitor files an application, there is no certainty that its purpose in then filing its application is to do more than block the competitor. The only recourse left to the commission, in seeing that the public convenience and necessity is served, is for it to include in any certificate issued a condition that operations under the certificate will be commenced within thirty days as was included in the order granting the certificate to appellee in this case.

Appellant contends that it is an existing utility already in the field and that it is arbitrary, unreasonable and confiscating to deny its application for the extension of its service to reach a more distant point, and to grant the certificate to another line. Reliance is placed on the decision of this court in the case of *Superior Motor Bus Co.* v. *Community Motor Bus Co.* 320 Ill. 175, and other cases, as paralleling the present proceedings. A mere reading of

the opinions is sufficient to distinguish those cases on the facts.

In the case of *Superior Motor Bus Co.* v. *Community Bus Co.* 320 Ill. 175, the utility already in the field desired an extension of its existing route while a newly organized company applied for a certificate to operate over the entire route, including the extension. No argument is required to convince anyone that it would be competition to permit the new company to cover the whole of the same route. If the application of appellee, in the instant case, had been to operate from Rock Island and Moline, or from Freeport to Peoria and then on to Decatur *via* Lincoln on the proposed route, the facts would be parallel and appellant could then rightly claim to be the first in the field and to be adequately serving the public needs, and that such service would be impaired or threatened by permitting a competing company to invade the field. In such a case this court might well say that the preference should be given to appellant and that a refusal to do so would be unreasonable and arbitrary. The finding of the commission that appellant is not a carrier already in the field except in a very limited sense is amply supported by uncontradicted proof. The fact that appellant operated between Peoria and Pekin with restrictions and then from Pekin to Delavan Junction, sixteen miles on its Springfield route, can in no reasonable sense be considered as anything more than operation in a limited manner along the proposed route from Peoria to Decatur.

This court has steadfastly refused to yield any ground on the protection afforded existing utilities against competition, (*West Suburban Transportation Co.* v. *Chicago and West Towns Railway Co.* 309 Ill. 87, and many other cases,) but we fail to see how the granting of the certificate to appellee can amount to competition with appellant along its entire route from Rock Island and Freeport to Peoria and Springfield and intermediate points. The case of *Bartonville Bus Line* v. *Eagle Motor Coach Line,* 326

Ill. 200, is also dissimilar on the facts from the instant proceedings, because the Eagle Line sought to cover the Bartonville Bus Line route in its entirety and to a point beyond. This court therein reannounced the rule that it is unreasonable to deny an existing utility, able to render a satisfactory service, a certificate to extend its route and to grant to a company just organized a certificate to operate over the entire route, where it is conceded that there is not sufficient traffic over the entire route to justify the operation of two motorbus lines. No attempt was made in either of the instant cases to show that there is sufficient traffic along the route to justify the issuance of both certificates and the commission found to the contrary in the hearing on appellant's application.

Appellant's counsel argue that the very fact that the commission found that public convenience and necessity does not require the proposed service by appellant in addition to that which appellee is authorized to render under the order entered on January 8, and affirmed on March 18, shows that the action of the commission was arbitrary and unreasonable. With that view we are not in agreement. As we view the records in both cases the difference in restrictions in the two applications justified the refusal to consolidate, not on the objection of appellee's counsel but on the objection of the Illinois Terminal. The Illinois Terminal cannot be subjected to competition between Peoria and Decatur, and *vice versa,* because of the restrictions in the certificate to appellee, which restrictions can not be violated by appellee, whose line does not extend beyond Peoria. Appellant, however, would be able, under similar restrictions, to effectively accept through traffic between those two cities, which would be taken from the Illinois Terminal, by selling through tickets from the tri-cities and Freeport and intermediate points *via* Peoria clear through to Lincoln and Decatur and *vice versa.* If appellant, without a certificate to extend its present service along the proposed route, sells such through tickets from points

north and northwest of Peoria it must do so through inter-line agreements with the Illinois Terminal. By denying the certificate to appellant the commission has protected the Illinois Terminal, a utility already in the field. By its orders of March 18, the commission has observed the rule announced by this court, that protection should be afforded to an existing utility already in the field. *Egyptian Transportation System* v. *Louisville and Nashville Railroad Co.* 321 Ill. 580.

There is competent, reliable and substantial evidence in the record made on appellant's application that the traffic on the proposed extension would not support more than one of the applicants. That finding of the commission being supported by substantial proof, we cannot substitute this court's judgment or preference as between two companies, either of which is capable of rendering the required service. *(City of Chicago* v. *Commerce Com.* 356 Ill. 501; *South Chi. Coal and Dock Co.* v. *Commerce Com.* 365 Ill. 218.) The commission had the following elements to consider in deciding which applicant was entitled to the certificate: (a) appellee's priority in filing its application; (b) the protection afforded the Illinois Terminal and the Brotherhood of Railroad Trainmen; and (c) the fact that appellee had once operated the service now proposed for two and a half years and had been forced to discontinue because of the depression and by the adverse position of the commission on a previous application by appellee, at a time when conditions and circumstances were variant from those existing at the time of the applications and hearings now involved. These considerations were sufficient to justify the orders entered and we are not able to say that such orders find no substantial support in the evidence or that they were arbitrarily entered. The orders entered on March 18, 1941, and each of them and the judgments of the circuit court must therefore be, and they are, affirmed.

*Judgments affirmed.*