2 Ill. App.3d 650 (1971)
275 N.E.2d 897
JOHN B. MARTIN et al., Plaintiffs-Appellees,
v.
KIRBY D. McCARRY et al., Defendant-Appellant.
No. 11377.
Illinois Appellate Court  Fourth District.
November 23, 1971.
Danby & Dobbs, of Carlinville, (Stuart Dobbs, of counsel,) and Giffin, Winning, Lindner, Newkirk & Cohen, of Springfield, (Alfred F. Newkirk, of counsel,) for appellant.
McGrady & Madden, of Gillespie, (Dennis McGrady, of counsel;) Wiseman, Shaikewitz & McGivern, of Alton, Reed, Armstrong, Gorman, *651 & Coffey, of Edwardsville; (Harry Armstrong, of counsel;) Phelps & Russell, of Carlinville, (Carl E. Kasten, of counsel;) and Droste & Droste, of Mt. Olive, (Robert L. Droste, of counsel,) for appellees.
Judgment affirmed.
Mr. PRESIDING JUSTICE SMITH delivered the opinion of the court:
This appeal results from the consolidation of suits involving multiple parties, multiple vehicles, multiple issues and multiple verdicts. The verdicts are seven in number. The issues in their ascending order are (1) were the cases properly consolidated; (2) were the verdicts returned by a single jury perverse or contradictory; and (3) if perverse or contradictory, are new trials in whole or in part mandated? Although the occurrence events involve collisions between a semi-trailer truck, a passenger bus and an automobile, the owner of the truck and its driver alone appeal.
The truck was proceeding in a northerly direction on Route 4 between the junction of Illinois routes 4-138 to his rear and the City of Gillespie ahead. It was a standard two-lane highway with the surface at least partially obscured by snow. Witnesses described the surface of the road in the vicinity of the accident as slippery, icy, snow-packed and established that the weather and road conditions were bad. This shoulder of the road on the west side of the highway is about three feet wide and the ditch on that side is three feet deep. The accident occurred around 6 P.M. on a January evening.
Proceeding in a southerly direction from the City of Gillespie was a work bus owned by the appellee Martin and operated by the appellee Fanning. Norbent, Beckley and Pernicka were passengers in the bus. As these two vehicles were approaching each other there was a double driveway on the east side of Route 4 into which the defendant Bartok, coming from the south in his automobile, entered after making a righthand turn. The evidence would indicate that he pulled into the driveway, backed out onto the highway, saw the approaching traffic and pulled forward into the driveway again. The bus driver testified that he first saw the lights of the truck when it was about 500 feet south of the accident with each in its own lane of traffic. When he got within 250 feet of the accident, he saw that there was a car perpendicular to the highway headed east and blocking at least two and one-half to three feet of the northbound lane. This car never moved from the time he first saw it and it was always in that position until the accident occurred. He slowed down his vehicle, drove the bus partially onto the righthand shoulder so that the right-front single wheel and the rear-dual wheels were about three feet off the west edge of the slab and his bus was partially on the *652 shoulder at the time of the collision. The oncoming truck during the last 100 feet or so of travel crossed into his lane and struck the left-hand side of the bus. He could not say whether or not it was skidding.
The truck driver, McCarry, testified that when he first saw the car on the road he applied his brakes and was 150 feet south of it traveling north. His truck started skidding and he saw some headlights in the other lane when he was south of the car. These lights did not change position. When he applied his brakes, the car was still on the road. The biggest portion of his lane was blocked. The car was headed more or less east and west. After he applied the brakes, his truck begin to slide so he let up on the brakes and applied them again and the truck jackknifed. At this time, the tractor portion of the truck crossed over to the other lane of traffic. At this time, he was probably 40 to 50 feet from the car. He kept sliding and slid into the car and went over into the southbound lane and hit the bus. When the tractor collided with the bus, the tractor was approximately three or three and one-half feet over the center line in the southbound lane. He stated it was his feeling that his truck went more out of control when the truck hit the car than it had been and that he was maybe two feet or so over the center line when the impact with the car occurred and then he skidded another foot or a foot and one-half into the bus after the truck hit the automobile.
The defendant Bartok testified that he pulled into the driveway and after stopping backed out onto the road. He could see lights coming from both ways and he figured they were about a half mile away. He asked his eleven-year-old son if he was on or off the road and the son said he didn't know. Bartok pulled up another three or four feet and the son said o.k. He could not see where his automobile was in relation to the highway. Another son testified that he looked out the back window and could see some of the edge of the road off to the side and to the rear on the right side of his dad's car. Another son testified that the back end of the car was off the road two or three feet. He did not think the truck would hit the car, but it did strike the right side of the car behind the right-rear door. The left-rear tire of the truck was touching the rear fender after the accident. The foregoing we think is a reasonably accurate portrayal of the occurrence events.
The three bus passengers sued the truck owner, the truck driver, the bus owner and the automobile driver and obtained verdicts only against the truck owner and its driver. The bus driver sued the truck owner, its driver and the automobile owner and obtained a judgment against the truck owner and the truck driver only. The bus owner sued the truck owner, the truck driver, and the automobile driver and obtained a judgment against the truck driver and the truck owner only. The truck *653 driver and the truck owner obtained a judgment against the automobile owner in their suits against the automobile owner, the bus driver and the bus owner. The automobile owner does not appeal from the judgments against him. The truck driver and the truck owner each appeal in all cases where verdicts were entered against them. It is their position that the consolidation of the cases for trial was error and resulted in a loss of substantial rights, that the jury was erroneously instructed as to damages in the bus driver's suit against them and that in any event the court ought to order a remittitur of $15,000 of the bus driver's judgment against them.
 1-3 Apparently everybody acquiesced in consolidating the cases for the purpose of depositions. The trial court ordered the consolidation of the cases for trial at the pretrial conference. Under our statute, Ill. Rev. Stat. 1969, ch. 110, par. 51, actions pending in the same court may be consolidated "whenever it can be done without prejudice to a substantial right". Such consolidation is a matter within the discretion of the trial court and unless that discretion has been abused, a reviewing court will not interfere. (Lumbermens Mutual Casualty Co. v. Poths, 104 Ill. App.2d 80, 243 N.E.2d 40; Black Hawk Motor Transit Co. v. Commerce Com., 383 Ill. 57, 48 N.E.2d 341; City of Chicago v. Atkins, 19 Ill. App.2d 177, 153 N.E.2d 302.) Apparently that discretion is measured by a determination of whether or not substantial rights will be prejudiced if the consolidation takes place. (Peck v. Peck, 16 Ill.2d 268, 157 N.E.2d 249.) The appellants do not seriously question this proposition, but rather contend that consolidation does not authorize a jury to return verdicts which are diametrically opposed to each other nor does it justify a trial court in refusing to grant a new trial when such a result obtains under consolidation. Cited in support of this position is Alabama Highway Express, Inc. v. Luster, 371 S.W.2d 182 (Tenn.); Milliken v. Smith, 405 S.W.2d 475 (Tenn.); Detrixhe v. McQuigg, 316 P.2d 617 (Okla.). These cases expressly repudiated Brown v. Parker, 233 S.W.2d 64, (Ark.) relied on by the trial court. Appellants insist that the court in Brown and the trial court here did not attach sufficient significance to a basic conclusive factor  only one jury is hearing the evidence and it cannot at the same moment believe that two totally irreconcilable and inconsistent facts exist. This rule does not obtain when separate trials are had before different juries. We think we should here point out that if the ultimate facts in this case are irreconcilable, inconsistent and diametrically opposed, it does not follow that the occurrence facts are irreconcilable, inconsistent or diametrically opposed. In short, as pointed out in the Milliken case, the rule is that the same jury on a single set of facts and circumstances cannot reach two different conclusions of facts as expressed *654 in their verdicts which will support valid judgments unless these opposite, inconsistent conclusions are reconcilable under an applicable rule of law.
The court gave the following instructions:
"Although there is more than one defendant in this action, it does not follow from that fact alone that if one is liable, all are liable. Each is entitled to a fair consideration of his own defense and is not to be prejudiced by the fact, if it should become a fact, that you find against the others. The instructions govern the case as to each defendant, insofar as they are applicable to him, to the same effect as if he were the only defendant in the action, and regardless of whether reference is made to defendant or defendants, in the singular or plural form. You will decide each defendant's case separately, as if each were a separate lawsuit.
The rights of the parties in these suits are separate and distinct. You should decide these as separate suits. But, the instructions given you apply to more than one party, they govern the case of each party to whom they apply.
If you find that a plaintiff is entitled to recover against more than one defendant, you may not allocate the damages among them, but you must return a verdict in one, single sum against all defendants whom you find to be liable."
The abstract discloses no objection on the part of anyone to these instructions in the conference on instructions and it is crystal clear that the jury was instructed and directed by the court to treat each cause of action separately. All parties concede that this is obviously what would happen if there was a severance and all suits were tried separately. All parties likewise concede that under such circumstances on the same set of facts arising out of the same event seperate juries could return perverse and diametrically opposite verdicts. Strictly speaking, the jury in this case did exactly what they were told to do, that is, handle each case on a separate basis and this they did. These verdicts, say the appellants, lack rationality when the jury held McCarry, the truck driver, guilty of negligence as to the bus driver, bus owner and passengers and yet the same jury held that this conduct did not amount to contributory negligence in their suit by McCarry and Major, the truck owner, against Bartok. Bartok, of course, did not appeal and is thus not unhappy with the overall result.
The trial court's able memorandum opinion did not follow the Tennessee and Oklahoma authorities cited above, but expressed what appears to us to be the majority opinion followed in the courts of Nebraska, *655 Arkansas, Missouri, New Mexico and New Jersey. This view is rather effectively enunciated in 88 CJS Trial, § 6, which reads:
"The consolidation of cases for trial does not operate to make each and every party in one case a party in each of the consolidated cases. Every legal right is preserved to the respective parties as fully as if the cases had been tried separately. Each case retains its distinctive characteristics and remains separate in respect of docket entries, depositions previously taken in one cause, verdicts, findings, judgments, and all other matters except the one of joint trial * * * and the rights of the parties are the same as if the cases had been heard separately and at different times, and the judgment to which a plaintiff is entitled in either case is not affected."
(Aragon v. Kasulka, 361 P.2d 719 (N.Mex.); Page v. Hamilton, 329 S.W.2d 758 (Mo.); Brown v. Parker, 233 S.W.2d 64 (Ark.); Koenig v. Frank's Plastering Co., 227 F. Supp. 849 (Neb.); Maliauskas v. Public Service Interstate Transporation Co., 6 N.J. 269, 78 A.2d 268.) It is these cases which appear to be consistent with the Illinois Practice Act and in Black Hawk Motor Transit Co. v. Commerce Com., 383 Ill. 57, 48 N.E.2d 341, at p. 346, where our Supreme Court stated:
"Where several cases involve an inquiry into the same event in its general aspects, the cases may be tried together, but with separate docket entries, verdicts and judgments, the consolidation being limited to a joint trial * * *."
It seems clear to us that the trial court and all counsel pleaded the occurrences here as the "same event".
There is unanimity of opinion among all parties that these verdicts were inconsistent, but that there was adequate evidence to sustain each verdict if the cases were tried separately. Even the appellants' counsel would seem to concede this point for the simple reason that they appeal from the sufficiency of the evidence to support the damage awards and in the alternative insist on a remittitur. It strikes us that somewhere between Carlinville and Springfield the appellants have reversed their field. It was they who filed their suit against Bartok; it was they who argued that suit against Bartok; it was they who received a verdict in behalf of the truck driver for $1,500 and in behalf of the truck owner for $6,000; it is they who in their post-trial motions did not repudiate these verdicts nor ask for a new trial, but they ask only that those cases be retried where they have received adverse verdicts. Indeed they want to keep the benefit of the perverse verdicts in their suits against Bartok  and he acquiesces in this  but they now want to use those same gains as a basis for escaping their liability in the other five cases. It strikes us that *656 there is more irrationality and injustice in reversing and remanding all of the cases than in affirming all of them. If the perverse and adverse verdicts nullify one, they nullify all. The appellants cannot have their cake and eat it too.
We think it can be said as pointed out in appellee Fanning's brief that there is a rational basis for holding that these verdicts are not perverse or adverse. It is fundamental in a court action that "in order that there may be negligence or actionable negligence there must be a legal duty to exercise care in favor of the person injured or to protect such person from injury, and a breach of, or failure to perform, such duty." (ILP Negligence, § 22.) Applying this rule, was Bartok's duty to the truck owner and the truck driver different than any duty he may have owed to the bus passengers, the bus driver and the bus owner? It is significant that the jury completely exonerated the bus driver and the bus owner from either negligence or contributory negligence and under this evidence properly so. The bus driver violated no duty he owed to either his employer or to the occupants of his bus if the jury believed he did all that he could have done to avoid the accident. The jury likewise apparently believed from their verdict that Bartok breached his duty to McCarry and Martin by having his automobile too far into the roadway and a picture in the evidence indicates damage to the right-rear of the automobile. Considering all the circumstances, known road conditions and the presence of traffic, his action was not that of a reasonably prudent person. Thus, the jury rationalized that it was Bartok's fault that McCarry and Martin were damaged. Indeed the appellants suggest that they were prejudiced because the jury could well have found McCarry and Fanning not guilty of negligence so far as the bus owner and occupants were concerned.
There can be little argument but that the truck struck the automobile. The physical facts indicate just that and the picture of the car portrays it. It is not unreasonable to conclude that the jury decided that Bartok violated his duty to the truck driver and the truck owner by having his car stationary in the truck's lane of traffic and that in so doing his conduct was not that of a reasonably prudent person. It then concluded that there was little or no way, road conditions considered, that the truck could have avoided hitting the automobile and that their damage was directly attributable to Bartok.
 4 There was considerable divergence in the testimony concerning the truck's speed as it approached the automobile. Even though there was no way for the truck to miss the automobile, the jury might well have held that the truck driver was breaching his duty to others on the highway in driving too fast, in not seeing the automobile in time, or in *657 not having proper control over his truck so as to keep it in his own lane of traffic. The evidence is undisputed that the truck was in the lane of traffic belonging to the bus and the several complaints so charged. When the truck crossed the center line then and invaded the territory belonging to the bus, the truck driver breached a duty to the occupants, the owner and the driver of the bus. We think that there is just reason for believing that the jury in this case sorted the wheat from the chaff and followed the precise instructions of the court with a degree of perspicacity and understanding for which it might properly be commended. Where different duties are breached in the same occurrence, different and what appears to be perverse verdicts may properly result. We think it clear that these verdicts were justified upon responsible evidence in this record and that they are not per se perverse or inconsistent. Only as to the passengers, the bus driver and the bus owner was the truck violating a duty to them by being in their lane of traffic. That breach of duty did not involve Bartok and hence was not contributory negligence as to him.
 5 The appellants' insistence that instructions No. 21 and 22 concerning future wage losses or possible future medical treatment are unsupported by the evidence we think is misapprehended. The medical testimony indicates the possibility or probability of an arthritic condition in the area of the fractures, a permanent diminution in gait, a permanent scar and a widening in the ankle and leg area. Charles Fanning stated that he cannot walk with a normal gait, cannot run, cannot stoop unless he throws out his foot and he cannot perform simple physical tasks such as bowling. It should also be borne in mind here that Fanning was unemployed for about 20 months and was awarded $8,500 for wage loss during that period. We think there is sufficient evidence in this record to warrant the giving of the two instructions as to loss of future earnings. (Grissom v. Goad, 335 Ill. App. 120, 80 N.E.2d 380; Manzeske v. Yellow Cab Co., 322 Ill. App. 280, 54 N.E.2d 239; Redmond v. Huppertz, 71 Ill. App.2d 254, 217 N.E.2d 85; Blyzes v. Midwest Towing Co., 109 Ill. App.2d 48, 248 N.E.2d 305.) Under the authorities here cited, the damages of $40,000 ought not be disturbed by this court nor is there a basis for a remittitur.
Accordingly, the judgment of the trial court should be and it is hereby affirmed.
Judgment affirmed.
CRAVEN and TRAPP, JJ., concur.