# ILLINOIS OFFICIAL REPORTS

## Appellate Court

***Wolin v. Department of Financial & Professional Regulation*, 2012 IL App (1st) 112113**

| | |
|---|---|
| Appellate Court Caption | HOWARD WOLIN, Plaintiff-Appellant, v. THE DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION; BRENT ADAMS, as Secretary of THE DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION; DONALD W. SEASOCK, as Acting Director of the Division of Professional Regulation; ILLINOIS STATE MEDICAL DISCIPLINARY BOARD; EDWARD P. ROSE, as Chairperson of the Board; and TARIQ H. BUTT, JUDY L. CATES, RICHARD R. FAY, MARIA LaPORTA, GEORGIA D. LUBBEN, SARITA M. MASSEY, GRACE ALLEN NEWTON, and RODEY WASSEF, as Members of the Board, Defendants-Appellees. |
| District & No. | First District, Sixth Division<br>Docket No. 1-11-2113 |
| Filed | December 21, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The indefinite suspension of plaintiff's medical license was upheld on the grounds that plaintiff failed to establish that he was denied due process when he was not allowed to make an oral statement and present documentary evidence in proceedings on charges that he violated the Medical Practice Act by using "crystals and secret methods" in his psychiatry practice, and he also was properly found in default for not producing certain requested documents. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-44976; the Hon. Lee Preston, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Law Offices of Nye & Associates, Ltd., of Buffalo Grove (Sandra G. Nye, of counsel), for appellant.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Brett E. Legner, Assistant Attorney General, of counsel), for appellees.

Panel

PRESIDING JUSTICE LAMPKIN delivered the judgment of the court, with opinion.

Justices Hall and Gordon concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Howard E. Wolin, M.D., appeals the decision of the Illinois Department of Financial and Professional Regulation (Department) to indefinitely suspend his license to practice medicine. Plaintiff contends that the administrative proceedings he was provided failed to comply with the requirements of due process where he was deprived of a full and fair opportunity to be heard and subjected to the bias of the administrative decision makers. Plaintiff further contends that the acting director of division of professional regulation abused his discretion when finding plaintiff in default and entering judgment against him. Based on the following, we affirm the Department's decision to indefinitely suspend plaintiff's medical license.

¶ 2                                    FACTS

¶ 3    Plaintiff was a registered physician and surgeon in Illinois with a concentration in the field of psychiatry. Plaintiff's practice included "integrative medicine," in which alternative or complementary treatments were used along with conventional mainstream medicine. Plaintiff claimed to use "some aspects" of mind-body medicine, biologically based practices, and energy therapies.

¶ 4    On October 16, 2008, the Department sent plaintiff a notice of preliminary hearing along with a complaint that the Department had filed against plaintiff. According to the complaint, on or about April 28, 2007, plaintiff began treating C.B., and the treatment "included the use of crystals and secret methods" in violation of the Illinois Medical Practice Act of 1987 (Medical Practice Act) (225 ILCS 60/22 (West 2008)). The complaint additionally claimed that between April 28, 2007, and August 7, 2007, plaintiff charged C.B. $11,451.28 for consultations, supplements, crystals, and shipping. Specifically, plaintiff was charged with violating three sections of the Medical Practice Act: section 22(A)(5), for engaging in dishonorable, unethical, or unprofessional conduct of a character likely to deceive, defraud, or harm the public; section 22(A)(6), for obtaining any fee by defraud, deceit, or

-2-

misrepresentation; and section 22(A)(10), for making a false or misleading statement regarding his skill or the efficacy or value of the medicine or treatment he prescribed. 225 ILCS 60/22(A)(5), (6), (10) (West 2010). The Department sought revocation, suspension, or other discipline against plaintiff's medical license.

¶ 5　　Plaintiff responded to the complaint on November 19, 2008, denying the Department's allegations, including the allegation that he used "secret methods" in treating a patient. Plaintiff further raised the matter of the Department's failure and refusal to supply him with appropriate release documents required by the federal Health Insurance Portability and Accountability Act of 1996 (HIPAA) (42 U.S.C. § 1320d *et seq.* (2006)).

¶ 6　　At the Department's preliminary hearing, plaintiff complained that the Department should have held an informal conference first. As a result, an informal conference was held on May 20, 2009, and was attended by plaintiff, his attorney, an attorney for the Department, and Edward P. Rose, M.D., chair of the medical disciplinary board (Disciplinary Board). Informal conferences held before the Disciplinary Board are confidential; therefore, no transcript appears in the record and we present the statements as they have been reported by the parties. During the conference, plaintiff invoked his constitutional right to decline to answer whether he personally used crystals as part of his practice because, according to plaintiff, he had been threatened with criminal action for using crystals. Instead, plaintiff attempted to make a statement regarding the "theory and practice of the therapeutic use of *** crystals and other forms of energy healing and to discuss the subject generally." According to plaintiff, Dr. Rose "sharply interrupted" him, refused to hear the statement, and said he was not interested in plaintiff's theories. According to plaintiff, Dr. Rose said the relevant issue was whether plaintiff used crystals in his practice because such actions would result in discipline. At that point, the informal conference was terminated.

¶ 7　　Then, on September 25, 2009, plaintiff filed a motion seeking to disqualify members of the Disciplinary Board from hearing the disciplinary charges against him. The Department filed a response, denying any wrongdoing. Plaintiff's motion to disqualify was never ruled on by the Department.

¶ 8　　On October 5, 2009, the Department filed its first motion to compel plaintiff to produce "any and all medical records, psychiatric records, psychotherapy notes and/or any other relevant information regarding patient C.B." and enclosed copies of documents purporting to be authorizations executed by C.B. permitting plaintiff to release the requested records to the Department. The release requests were provided to plaintiff's attorney on February 9, 2009, but plaintiff failed to produce any records in response. On November 23, 2009, the Department filed a second motion to compel. On December 28, 2009, plaintiff answered, stating that the record-release forms signed by C.B. were defective. On January 12, 2010, the Department filed a response, maintaining the release requests complied with the requisite statute.

¶ 9　　On February 8, 2010, at a status hearing, plaintiff sought leave to file a surreply to the Department's January 12, 2010, response. The administrative law judge (ALJ), Sadzi Oliva, denied the request. In addition, ALJ Oliva found that the releases provided by C.B. complied with the Illinois Mental Health and Developmental Disabilities Confidentiality Act

-3-

(Confidentiality Act) (740 ILCS 110/1 (West 2008)) and the federal HIPAA, and further found that the therapist-patient privilege could be waived by the holder of the privilege, which C.B. clearly intended to do. Accordingly, the order granted the Department's second motion to compel, provided plaintiff until March 8, 2010, to comply, and noted a status hearing scheduled for March 29, 2010.

¶ 10    However, on March 11, 2010, the Department filed a motion to transfer the matter to the acting director of the division of professional regulation, Donald W. Seasock (Director), for a decision based on the pleadings because plaintiff had not complied with the ALJ's discovery order. After reviewing the transfer order, ALJ Oliva provided plaintiff until March 24, 2010, to respond and confirmed the March 29, 2010, status hearing. On March 24, 2010, plaintiff responded, seeking reconsideration and vacatur of the February 8, 2010, order to produce C.B.'s medical records. Plaintiff argued that he had not received the February 8, 2010, order, and that the release forms did not comply with the law.

¶ 11    On March 29, 2010, a status hearing was held before ALJ John Lagattuta during which he refused to entertain additional arguments, finding the matter to be fully briefed. ALJ Lagattuta ultimately denied plaintiff's motion and required plaintiff to produce C.B.'s medical records by April 5, 2010, otherwise a default order would be entered.

¶ 12    On April 12, 2010, plaintiff was held in default for failing to produce C.B.'s medical records and the matter was transferred to the Director. Upon transfer, the matter was assigned to the Disciplinary Board, this time to review the pleadings and make recommendations to the Director. On June 2, 2010, the Disciplinary Board issued its findings of fact, conclusions of law, and recommendations to the Director, recommending that plaintiff be found guilty of the violations charged in the complaint and that his license be indefinitely suspended.

¶ 13    On June 3, 2010, the Department issued a notice to plaintiff stating that he had 20 days from the date of mailing to present a written motion for rehearing/reconsideration specifying the grounds therefor. The notice further provided that the "Director of the Department may grant oral argument on this Motion if he deems it necessary for a clearer understanding of the issues presented." Plaintiff filed a motion for rehearing and/or reconsideration on June 22, 2010, requesting oral argument. In his motion, plaintiff claimed that Dr. Rose and the Disciplinary Board were biased against him and that the record-release forms were invalid. The Department responded on July 2, 2010, citing the February 8, 2010, order of ALJ Oliva. Further, the Department attached the six release forms signed and submitted by C.B. On August 9, 2010, plaintiff filed his reply to the Department's response.

¶ 14    On September 23, 2010, the Director denied plaintiff's motion to reconsider the Disciplinary Board's recommendation. The Director found that three of the release forms signed by C.B. were valid and enforceable authorizations to release the requested medical records. Additionally, the Director concluded that plaintiff's failure to comply with those documents was grounds for a decision upon the pleadings. Without a hearing, the Director adopted the Disciplinary Board's findings, conclusions, and recommendation. Consequently, plaintiff's medical license was indefinitely suspended.

¶ 15    On October 15, 2010, plaintiff filed his complaint for administrative review and the Department responded. At the subsequent hearing, the circuit court rejected the claim that

Dr. Rose, or any other member of the Disciplinary Board, was biased. In its final written order, entered July 20, 2011, the court explained that "there is nothing in the record that indicates that Dr. Rose was unable to judge this controversy fairly." The court also found that the Department did not violate plaintiff's right to due process by deciding the matter on the pleadings because the entry of default against plaintiff was reasonable under the circumstances. Furthermore, the court held that the three record-release authorizations found valid by the Department did indeed comply with the law. This appeal followed.

¶ 16                                    DECISION

¶ 17                              I. Standard of Review

¶ 18    Plaintiff disputes the Department's decision to suspend indefinitely plaintiff's medical license on the grounds that he was deprived of his due process rights throughout the administrative proceedings and that the decision was based on faulty record-release authorizations.

¶ 19    On appeal, this court reviews the agency's decision and not the determination of the circuit court conducting the administrative review. *Calvary Baptist Church of Tilton v. Department of Revenue*, 349 Ill. App. 3d 325, 330 (2004). The applicable standard for reviewing an agency decision depends on "whether the question presented is one of fact, a mixed question of fact and law, or a pure question of law." *Cunningham v. Schaeflein*, 2012 IL App (1st) 120529, ¶ 19. The factual findings and conclusions of an administrative agency are deemed *prima facie* true and correct. *Sudzus v. Department of Employment Security*, 393 Ill. App. 3d 814, 819 (2009). The reviewing court's function is to determine whether those findings are contrary to the "manifest weight of the evidence." *Id.*; *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992). An administrative agency's factual determinations are against the manifest weight of the evidence "only if the opposite conclusion is clearly evident." *Abrahamson*, 153 Ill. 2d at 88. "The mere fact that an opposite conclusion is reasonable or that the reviewing court may have ruled differently will not justify the reversal of administrative findings." *Id.* Alternatively, an administrative agency's decision on a question of law is not binding on a reviewing court and is reviewed *de novo*. *Sudzus*, 393 Ill. App. 3d at 824.

¶ 20    The third standard of review applies to an administrative agency's determination involving mixed questions of law and fact. A mixed question of law and fact concerns the application of an established set of facts to an undisputed legal standard. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 211 (2008). In other words, the issue is whether, when applied to the established facts, the rule of law is or is not violated. *Id.* When examining the legal effect of a given state of facts, the question becomes a mixed question of fact and law and the clearly erroneous standard of review applies. *Id.* The clearly erroneous standard is significantly deferential and an agency's decision should be reversed only when the court is left with the definite and firm belief that a mistake has been committed. *Board of Education of Rich Township High School District No. 227 v. Illinois State Board of Education*, 2011 IL App (1st) 110182, ¶ 63.

¶ 21                                   II. Due Process

¶ 22      Plaintiff claims that he was denied a full and fair opportunity to be heard in conformance
with the requirements of due process. Specifically, plaintiff contends that he was denied the
right to be heard throughout the administrative hearings and that he was not afforded a fair
and impartial hearing due to Dr. Rose's bias against plaintiff's style of medicine.

¶ 23                                 A. Right to Be Heard

¶ 24      We first address plaintiff's assertion that he was denied his right to be heard during the
informal conference and during the remainder of the administrative hearings.

¶ 25      "[A]n administrative proceeding is governed by the fundamental principles and
requirements of due process of law. However, due process is a flexible concept that requires
only such procedural protections as fundamental principles of justice and the particular
situation demand." *Abrahamson*, 153 Ill. 2d at 92. "An administrative hearing comports with
due process where the parties are given the opportunity to be heard, the right to cross-
examine adverse witnesses, and impartiality in ruling upon evidence." *Gonzalez v. Pollution
Control Board*, 2011 IL App (1st) 093021, ¶ 42. A court will find a due process violation
only if there is a showing of prejudice. *Id*. A claim that an administrative proceeding violated
an individual's right to due process presents a question of law and, therefore, is subject to *de
novo* review. *Sudzus*, 393 Ill. App. 3d at 824.

¶ 26      The regulations for the Medical Practice Act of 1987 provide applicable standards for
medical disciplinary proceedings and, in relevant part, state:

          "(a) An informal conference is the procedure established by the Division to resolve
     complaints, licensing issues, or conflicts prior to initiating any action requiring a formal
     hearing. Informal conferences are for the purposes of compliance review, fact finding,
     and discussion of the issues.

                                        * * *

          (e) The respondent shall have an opportunity at the informal conference to make an
     oral statement and to present any documents that might be relevant to the matter." 68 Ill.
     Adm. Code 1285.220(a), (e) (2005).

¶ 27      Turning first to plaintiff's contention regarding the violation of his due process rights at
the informal conference, plaintiff specifically argues that he was refused an opportunity to
make an oral statement and to present documentary evidence. While noting that an informal
conference is a discretionary proceeding, we find that, once an informal conference was held,
plaintiff should have been afforded the opportunity to make an oral statement and present
relevant documents during that informal conference, pursuant to section 1285.220(e) of title
68 of the Code. See 68 Ill. Adm. Code 1285.215 (2005). However, failure to comply with
the requirements of the informal conference does not rise to the level of a due process
violation. Defendants argue, and plaintiff concedes, that a violation of an administrative
regulation does not rise to the level of a constitutional infringement. See *Tenny v.
Blagojevich*, 659 F.3d 578, 583 (7th Cir. 2011) ("[f]ailure to implement state law violates
that state law; not the Constitution" (internal quotation marks omitted)). Moreover, plaintiff

fails to demonstrate, or even allege, that he was prejudiced by his inability to present an oral statement or documentary evidence. See *Gonzalez*, 2011 IL App (1st) 093021, ¶ 42.

¶ 28    Although plaintiff was denied the opportunity to present oral statements and relevant documents during the informal conference, he was not precluded from being heard during the course of the proceedings. Plaintiff failed to avail himself of the rights provided by section 1110.160 of title 68 of the Code (68 Ill. Adm. Code 1110.160 (2004)), such as the presentation of and cross-examination of witnesses, by refusing to comply with the ALJ's orders compelling the release of C.B.'s medical records.

¶ 29    In response to plaintiff's argument that he was denied due process by the denial of his motion to file a surreply during the February 8, 2010, status hearing, we find that plaintiff had ample opportunity to raise his arguments regarding the Department's second motion to compel. Plaintiff concedes that he not only filed a response to the Department's second motion to compel, but also moved to reconsider and vacate the order granting the motion. Moreover, plaintiff does not cite any authority to support his contention that he has a due process right to file a surreply in violation of Illinois Supreme Court Rule 341(h)(7) (eff. July 1, 2008) (the appellant must present his contentions "and the reasons therefor, with citation of the authorities and the pages of the record relied on").

¶ 30    We, therefore, conclude that plaintiff was provided sufficient opportunities to be heard during the administrative proceedings.

¶ 31                                    B. Bias

¶ 32    Next, plaintiff contends that he was not provided a fair and impartial hearing because Dr. Rose was biased against plaintiff's "style of medicine," thereby infecting the actions of the entire Disciplinary Board and the Director.

¶ 33    In order to demonstrate bias or prejudice, a claimant must "show[ ] in the record that the administrative proceedings were either tainted by dishonesty or contained an unacceptable risk of bias." (Internal quotation marks omitted.) *SMRJ, Inc. v. Russell*, 378 Ill. App. 3d 563, 571 (2007); see *Williams v. Board of Trustees of the Morton Grove Firefighters' Pension Fund*, 398 Ill. App. 3d 680, 692-93 (2010). Bias may be indicated "if a disinterested observer might conclude that the administrative body, or its members, had in some measure adjudged the facts as well as the law of the case in advance of hearing it." (Internal quotation marks omitted.) *Danko v. Board of Trustees of Harvey Pension Board*, 240 Ill. App. 3d 633, 642 (1992). "[A] mere possibility of prejudice is insufficient to show that a board, or any of its members, was biased." (Internal quotation marks omitted.) *Daniels v. Police Board*, 338 Ill. App. 3d 851, 862 (2003); *SMRJ*, 378 Ill. App. 3d at 571. Moreover, a decision maker is not disqualified "simply because he has taken a position, even in public, on a policy issue related to the dispute, in the absence of a showing that he is not capable of judging a particular controversy [fairly] on the basis of its own circumstances." (Internal quotation marks omitted.) *Daniels*, 338 Ill. App. 3d at 862. In the absence of a showing to the contrary, members of the administrative tribunal "are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances." (Internal quotation marks omitted.) *Id.* at 861.

¶ 34 In the case at hand, plaintiff rests his assertions of bias on allegations that Dr. Rose, in his role as chair of the Disciplinary Board, was hostile toward plaintiff's style of medicine and refused to allow plaintiff to make an oral statement and present documents during the informal conference. We again note that, due to the confidential nature of the informal conference, there are no transcripts available to verify plaintiff's statements or review Dr. Rose's alleged statements within their full context. See 68 Ill. Adm. Code 1285.310(a) (2005). Relying solely on plaintiff's characterization of the events, however, we nevertheless find that plaintiff failed to sufficiently show that the proceedings were "tainted by dishonesty or contained an unacceptable risk of bias." *SMRJ*, 378 Ill. App. 3d at 571. Plaintiff concedes that he refused to discuss his use of crystals during the treatment of his patient, thus showing that neither Dr. Rose nor any of the Disciplinary Board members made any judgments regarding the merits of the case in advance of hearing it. See *Danko*, 240 Ill. App. 3d at 642. Additionally, Dr. Rose's alleged "hostile" attitude and behavior toward plaintiff's style of medicine does not automatically require disqualification. See *Daniels*, 338 Ill. App. 3d at 862. There are no additional facts within the record or plaintiff's assertions that indicate that Dr. Rose was unable to judge the controversy fairly and impartially. Accordingly, we reject plaintiff's claim that he was deprived of due process on that basis.

¶ 35                               III. Medical Authorizations

¶ 36 Plaintiff claims that the Director abused his discretion in finding plaintiff in default and entering judgment against him for failing to produce the requested documents where the medical-record-release authorizations for those documents were invalid.

¶ 37 As noted above, the applicable standard for reviewing an agency decision depends on "whether the question presented is one of fact, a mixed question of fact and law, or a pure question of law." *Cunningham*, 2012 IL App (1st) 120529, ¶ 19.

¶ 38 We first address whether the challenged record-release authorizations were valid. That question presents a mixed question of law and facts. See *Cinkus*, 228 Ill. 2d at 211. Accordingly, we apply the clearly erroneous standard of review. See *id.*

¶ 39 The Director determined that three record-release authorizations, labeled Department exhibits A, C2, and C3, were valid. Plaintiff asserts, however, that each authorization was invalid because it failed to comply with both the state and federal laws that govern the confidentiality and disclosure of mental health records.

¶ 40 Turning first to the question of federal compliance, numerous regulations have been promulgated to implement HIPAA. In relevant part, medical information may be disclosed pursuant to a valid authorization under section 164.508 of the regulations. 45 C.F.R. § 164.502(a)(1)(iv) (2012). Section 164.508 of the regulations provides that authorization for psychotherapy notes is not required if disclosure is required by section 164.512(d) with respect to the oversight of the originator of the psychotherapy notes. 45 C.F.R. § 164.508(a)(2)(ii) (2012). Section 164.512 of the regulations states that otherwise protected health information may be disclosed without written authorization of the individual as required by section 164.508 in certain circumstances. 45 C.F.R. § 164.512 (2012). One such circumstance is disclosure to a health oversight agency for oversight activities authorized by

law, including administrative investigations, licensure and disciplinary actions, administrative proceedings, and other activities necessary for the oversight of the health care system. 45 C.F.R. § 164.502(d) (2012). A health oversight agency includes a state agency authorized by law to oversee the health care system. 45 C.F.R. § 164.501 (2012). As an agency that oversees the Medical Practice Act, the Department qualifies as a health oversight agency. 225 ILCS 60/10 (West 2010); see *Doe v. Illinois Department of Professional Regulation*, 341 Ill. App. 3d 1053, 1063 (2003). Therefore, pursuant to HIPAA, written authorizations were not required for the disclosure of C.B.'s mental health records to the Department. Accordingly, there was no federal HIPAA violation.

¶ 41    Turning next to plaintiff's contention that the record-release authorizations failed to comply with the Confidentiality Act, we note that plaintiff has made inconsistent arguments regarding exhibit A's compliance with the statute. Notably, plaintiff first argued in his appellant brief that exhibit A was in compliance with the Confidentiality Act, but later contended in his reply brief that it had not complied with the statute. We address plaintiff's challenges related to the compliance of the record-release authorizations with the Confidentiality Act in turn.

¶ 42    The Confidentiality Act provides that all mental health and developmental disabilities records and communications generally may be disclosed to someone other than those persons permitted by section 4 of the Confidentiality Act only with the written consent of persons allowed access pursuant to section 5. 740 ILCS 110/5(a) (West 2010). In other words, for purposes of this case, C.B., having the right to inspect and copy her own records, could authorize disclosure of her medical records in accordance with the written consent described in section 5(b) of the Confidentiality Act.

¶ 43    Specifically, consent forms must be in writing and include the following:

"(1) the person or agency to whom disclosure is to be made;

(2) the purpose for which disclosure is to be made;

(3) the nature of the information to be disclosed;

(4) the right to inspect and copy the information to be disclosed;

(5) the consequences of a refusal to consent, if any; and

(6) the calendar date on which the consent expires, provided that if no calendar date is stated, information may be released only on the day the consent form is received by the therapist; and

(7) the right to revoke consent at any time." 740 ILCS 110/5(b) (West 2010).

¶ 44    Plaintiff claims that the authorizations failed to comply with section 5(a)(4). 740 ILCS 110/5(a)(4) (West 2010). The authorizations provided: "I understand that the above-named agency/facility/person authorized to receive this information has the right to inspect and copy the information to be disclosed." Plaintiff asserts that the right to inspect and copy the information to be disclosed should be with the authorizing person. Defendant, however, claims that the form does not have to disclose the right to inspect and copy the information to the individual providing consent but, rather, to the individual/entity to whom disclosure is authorized.

¶ 45    Section 4 of the Confidentiality Act separately governs the authorizing individual's right to inspect and copy records (740 ILCS 110/4(a) (West 2010)), while section 5 enumerates the requirements where "records and communications may be disclosed to someone other than those persons listed in Section 4 of this Act only with the written consent of those persons who are entitled to inspect and copy a recipient's record pursuant to Section 4 of this Act" (740 ILCS 110/5(a) (West 2010)). Thus, we find that the language in all three authorization forms is in compliance with the Confidentiality Act.

¶ 46    Additionally, plaintiff asserts that exhibit C2 is further defective because the signer wrote "N/A" in the blank informing the signer of the consequences of refusing to consent to the disclosure pursuant to section 5(a)(5). 740 ILCS 110/5(a)(5) (West 2010). Plaintiff claims that the "N/A" written in exhibit C2 indicates that the signer was "not aware." This argument strains the meaning of the phrase which is commonly used to mean "not applicable." Indeed, plaintiff has made note that discussions with the Department have revealed that N/A means "not applicable." Therefore, we find this argument without merit.

¶ 47    Next, we consider plaintiff's contention that exhibit A is in violation of section 5(c) despite the inconsistencies in his briefs. 740 ILCS 110/5(c) (West 2010). Section 5(c) states that "[o]nly information relevant to the purpose for which disclosure is sought may be disclosed." 740 ILCS 110/5(c) (West 2010). "Blanket consent to the disclosure of unspecified information shall not be valid." 740 ILCS 110/5(c) (West 2010). Exhibit A requests "any and all services and products provided by Dr. Wolin, his office staff, and colleagues." We note that the language in the record-release authorization is broad. Nevertheless, the request is for relevant information needed to assess the kinds of methods that were used in the treatment of plaintiff's patient. Moreover, as noted above, the clearly erroneous standard is "significantly deferential" and we do not have a "definite and firm conviction that a mistake has been made." See *Board of Education of Rich Township High School District No. 227*, 2011 IL App (1st) 110182, ¶ 63. Therefore, we find that exhibit A is not in violation of section 5(c). 740 ILCS 110/5(c) (West 2010).

¶ 48    Finally, we consider whether the Director abused his discretion in finding plaintiff in default for his failure to comply with orders requiring him to produce documents and by entering an indefinite suspension of his medical license. "An administrative agency's decision regarding the conduct of its hearing *** [is] governed by an abuse of discretion standard and is subject to reversal only if there is demonstrable prejudice to the complaining party." *Matos v. Cook County Sheriff's Merit Board*, 401 Ill. App. 3d 536, 541 (2010). Here, we find that the authorization forms were valid and, therefore, the Director did not abuse his discretion in suspending plaintiff's medical license.

¶ 49                                    CONCLUSION

¶ 50    For the foregoing reasons, we find that plaintiff has failed to demonstrate that he was denied due process throughout the administrative process. We likewise find that the record-release authorizations were valid and the Director did not abuse his discretion in finding plaintiff in default. Accordingly, we affirm the judgment of the circuit court upholding the decision of the Department to indefinitely suspend plaintiff's medical license.

¶ 51        Affirmed.