# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Aich v. City of Chicago*, 2013 IL App (1st) 120987

---

| | |
|---|---|
| Appellate Court Caption | ABRAHAM A. AICH, Petitioner-Appellant, v. THE CITY OF CHICAGO, Respondent-Appellee. |
| District & No. | First District, Fourth Division<br>Docket No. 1-12-0987 |
| Rule 23 Order filed<br>Rule 23 Order<br>withdrawn<br>Opinion filed | April 11, 2013<br><br>May 8, 2013<br>June 6, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The appellate court upheld an administrative law judge's decision that petitioner violated defendant city's municipal code by failing to timely notify the city of his divorce, and thereby caused the city to pay for his former wife's health insurance beyond the date that such payments were required, since the judge's findings were not against the manifest weight of the evidence, where petitioner's contention that an affidavit from a city claims supervisor was hearsay was misplaced, any error arising from consideration of a handwritten note on a form that was admitted into evidence was harmless, and the administrative law judge did not improperly shift the burden of proof to petitioner. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CH-450240; the Hon. Patrick T. Rogers, Judge, presiding. |
| Judgment | Affirmed. |

| | |
|---|---|
| Counsel on Appeal | Ralph J. Licari, of Ralph J. Licari & Associates, Ltd., of Chicago, for appellant. |
| | Stephen R. Patton, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Suzanne M. Loose, Assistant Corporation Counsel, of counsel), for appellee. |
| Panel | PRESIDING JUSTICE LAVIN delivered the judgment of the court, with opinion. |
| | Justices Fitzgerald Smith and Pucinski concurred in the judgment and opinion. |

**OPINION**

¶ 1     This appeal arises from a determination of the department of administrative hearings (DOAH) of the City of Chicago (the City) that petitioner Abraham Aich, a Chicago police officer, violated the Municipal Code of Chicago by failing to reimburse the City for expenses incurred when petitioner failed to timely report to the City that he had obtained a divorce from Sumaya Aich and failed to remove her as a beneficiary of his insurance benefits. On appeal, petitioner asserts that the administrative law judge (ALJ) improperly considered hearsay evidence and transferred the City's burden of proof to petitioner. He also contends that the ALJ's findings were against the manifest weight of the evidence. We affirm.

¶ 2                                  I. BACKGROUND

¶ 3     In April 2011, the City filed a complaint with the DOAH seeking a determination that petitioner had failed to pay a debt owed to the City as a result of the City's expenditure of healthcare benefits on petitioner's ineligible dependent in violation of section 1-20-090 of the Municipal Code of Chicago (Chicago Municipal Code § 1-20-90 (amended July 21, 2004)). Specifically, the City alleged that petitioner, a City employee, was married to Sumaya Aich, who began receiving healthcare coverage under petitioner's employee healthcare plan on about July 18, 2000. The couple divorced on July 21, 2004, however, and the City handbook required employees to terminate healthcare coverage for a former spouse by notifying the benefits management office of the department of finance (BMO) within 30 days of the divorce. Petitioner did not inform the BMO until October 28, 2005. As a result, Sumaya continued receiving coverage to which she was not entitled from July 21, 2004, to October 28, 2005, costing the City $3,498.94. The City further alleged that petitioner did not comply with the City's letter demanding reimbursement.

-2-

¶ 4    At the hearing on the City's complaint, the ALJ granted the City's motion to admit several exhibits into evidence. The first exhibit was an affidavit executed by Judith Landoch, a benefit claims supervisor and keeper of business records for the BMO. Landoch stated that pursuant to City policy, "all new employees are provided with access to the employee handbook." Petitioner requested healthcare coverage for Sumaya on July 18, 2000. Landoch also stated that every year, the BMO mailed open enrollment forms listing an employee's covered dependents and that the BMO sent petitioner a form listing Sumaya as a covered dependent for the years 2004 to 2006. Although petitioner was divorced from Sumaya on July 21, 2004, he did not notify BMO of his divorce until October 28, 2005. Between those dates, the cost of benefits provided to Sumaya was $3,498.94, in violation of the handbook, and the City had not been reimbursed. Attached to Landoch's affidavit was a 2004 open enrollment form dated October 31, 2003, as well as the 2005 open enrollment form for the enrollment period beginning on October 24, 2004, both of which list Sumaya as a beneficiary. The attached 2006 enrollment form also lists Sumaya as a beneficiary.

¶ 5    Petitioner objected to Landoch's affidavit, arguing that the admission of a document with no foundation and no support was neither competent nor substantial. The ALJ overruled petitioner's objection, noting that he could request that a subpoena be issued, and that the administrative rules permitted testimony to be provided through an affidavit. When petitioner's attorney stated that the burden was on the City, not petitioner, the City essentially replied that it was meeting its burden through Landoch's affidavit, which was admitted into evidence.

¶ 6    The City also presented the judgment dissolving petitioner's marriage to Sumaya, entered on July 21, 2004, which appears to have been certified on July 26, 2004, as well as portions of the handbook which state that the employee is responsible for notifying the City when his partner becomes ineligible for benefits, that the BMO must be notified within 30 days of changes and that documentation in support of the change must be submitted within 60 days. In addition, the City presented a letter to petitioner which explained that he owed the City $3,498.94 for the additional coverage the City paid for due to his failure to properly notify the BMO of his divorce. Following the admission of the City's exhibits, the ALJ found that the City had presented a *prima facie* case.

¶ 7    Petitioner's attorney moved for a directed finding, arguing there was no evidence he could contest because he could not cross-examine the City's documents. The following colloquy ensued:

"ALJ DAVIS: Well, *** you could have called a witness. You didn't.

MR. GEIGER [petitioner's attorney]: It's not my burden, your Honor.

ALJ DAVIS: Well, no.

MR. GEIGER: It's their burden.

ALJ DAVIS: The City is allowed to present testimony through affidavit, and you are allowed to call any witnesses that you see fit to do, sir. So I found that they presented a *prima facie* case."

¶ 8    Petitioner testified that during his marriage to Sumaya, he became a Chicago police officer. He received health insurance through the City, but never received a handbook. In

addition, he received the judgment for the dissolution of his marriage on July 21, 2004, and received the certified copy of the judgment five days later. Petitioner had obtained a certified copy because coworkers told him that he needed to submit it to the BMO to remove Sumaya from his medical insurance. Specifically, petitioner was aware that he was required to give the City a copy of his divorce judgment within 30 days and he submitted the certified copy to the BMO on the same day he received it. Petitioner remarried in Nicaragua about one month later, on August 14, 2004, and took his new marriage certificate to the BMO, which told petitioner he needed to obtain a certified copy. Petitioner obtained a certified copy on September 1, 2004, but the BMO would not accept it because it was not from the United States. Petitioner subsequently obtained a marriage certificate from the City, which was recorded on October 25, 2005. Three days later, the BMO accepted that document and added his new wife to his insurance. Petitioner's exhibits were then admitted into evidence, including the dissolution of marriage judgment, the marriage certificate from the Republic of Nicaragua, a certified copy of that certificate and the marriage certificate issued by the City.

¶ 9        On cross-examination, petitioner testified that coworkers told him he needed to go to the BMO to have himself added to a healthcare coverage plan. When he submitted a certified divorce decree to the BMO on July 26, 2004, he also submitted an information form to delete his spouse. Petitioner then identified a spouse information form, which was admitted into evidence without objection. The form, dated October 28, 2005, lists Sumaya as petitioner's wife and states that the purpose of the form is to delete his spouse due to divorce. A handwritten note at the top of the form states that they had been divorced since July 2004 and were "just now taking off insurance." The ALJ then admitted into evidence three other exhibits, the first of which was an employee information form for selecting a medical plan, signed by petitioner on June 30, 2000. The second exhibit was a form adding petitioner's daughter as a dependent, and the third exhibit was a form adding his second wife, Fatima, as a dependent. In addition, petitioner testified that an employee could make changes to his dependents during the open enrollment period but his testimony was equivocal regarding whether he ever saw the open enrollment forms that were addressed to him. Petitioner acknowledged that the open enrollment forms listed Sumaya as a dependent. Petitioner also testified that he had assumed the City had previously removed Sumaya as a dependent because he had already given the City a copy of the divorce decree. On redirect examination, petitioner testified that when he took the dissolution of marriage judgment to the BMO on July 26, 2004, the BMO had him fill out the form deleting his spouse, Accordingly, the form he completed to remove Sumaya as a beneficiary on October 28, 2005, was the second form he had completed. Furthermore, after the City informed petitioner of its claim, he spoke to Sumaya, who denied using any of the City's insurance coverage.

¶ 10       Upon inquiry from the ALJ, petitioner testified that when he gave the BMO a copy of the divorce decree and a spouse-removal form in 2004, the BMO did not give him any documentation in return. The ALJ also asked the City who authored the handwritten note on the spouse-removal form. When the City responded that the note was written by "someone" in the BMO, petitioner's attorney objected, arguing that petitioner was unable to test such hearsay. The ALJ clarified, however, that "the only problem I have is that the City has copies

-4-

of all of the documentation which correlates with what [petitioner] has testified to, except the document that shows that you took your wife off of the policy, your former wife." The ALJ questioned why the City would have every document but one. Following argument, the ALJ found the City had proven its case by a preponderance of the evidence and ordered petitioner to pay a $3,498.94 fine, $350 in attorney fees, $40 in administrative costs and $174.94 in interest. On June 15, 2011, petitioner filed a petition for administrative review. The trial court subsequently affirmed the ALJ's decision.

¶ 11                                    II. ANALYSIS

¶ 12        On appeal, petitioner raises several challenges to the ALJ's determination. The ALJ's final decision is subject to the Illinois Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2010)). *Schachter v. City of Chicago*, 2011 IL App (1st) 103582, ¶ 34. We review the decision of the agency, rather than the trial court. *Id.* Petitioner first asserts that the ALJ abused its discretion by considering hearsay evidence. Specifically, he challenges Landoch's affidavit and the handwritten note on the spouse-removal form. We review an administrative agency's evidentiary ruling for an abuse of discretion. *Trettenero v. Police Pension Fund*, 333 Ill. App. 3d 792, 801 (2002).

¶ 13        The City's "General Rules and Regulations" (City Rules) provide that "the formal and technical rules of evidence shall not apply in the conduct of administrative hearings." City of Chicago General Rules and Regulations § 1.7 (eff. July 14, 1997). The City Rules also provide that "[e]vidence, including hearsay, may be admitted only if it is of a type commonly relied upon by reasonably prudent persons in the conduct of their affairs." City of Chicago General Rules and Regulations § 1.7 (eff. July 14, 1997) (citing Chicago Municipal Code § 2-14-076 (amended Apr. 29, 1998)); *cf. Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 94 (1992) (supreme court observed in a nonmunicipal setting that hearsay is generally inadmissible in an administrative proceeding); *cf.* also *Moscardini v. County Officers Electoral Board*, 224 Ill. App. 3d 1059, 1063 (1992) (appellate court found in a nonmunicipal setting that "the rule against hearsay is a fundamental rather than a technical rule"). In addition, pursuant to the Illinois Municipal Code, "[p]arties shall be provided with an opportunity for a hearing during which they may *** cross-examine opposing witnesses. Parties may request the hearing officer to issue subpoenas to direct the attendance and testimony of relevant witnesses and the production of relevant documents." 65 ILCS 5/1-2.1-5(c) (West 2010). Similarly, the City's municipal code provides that "[u]pon the timely request of any party to the proceeding, any person, who the administrative law officer determines may reasonably be expected to provide testimony which is material and which does not constitute a needless presentation of cumulative evidence, shall be made available for cross-examination prior to a final determination of liability." Chicago Municipal Code § 2-14-076(j) (amended Apr. 29, 1998). Furthermore, it is well settled that "a hearing officer's power to subpoena witnesses sufficiently protects the parties' right to cross-examine adverse witnesses." *Jackson v. City of Chicago*, 2012 IL App (1st) 111044, ¶ 80 (cases compiled therein).

¶ 14        Here, petitioner was aware that the City was presenting its case through the sworn

affidavit of Landoch, who stated that petitioner had not notified the City of his divorce until October 28, 2005. As shown by the aforementioned rules pertaining to municipal administrative proceedings, petitioner's assertion that the affidavit was inadmissible as hearsay is misplaced. In addition, petitioner has developed no argument that Lochner's affidavit was not of a type commonly relied upon by reasonably prudent persons. Furthermore, petitioner did not exercise his right to cross-examine Lochner by having the ALJ subpoena her. Accordingly, he has not demonstrated that the trial court abused its discretion by admitting Lochner's affidavit.

¶ 15    We also reject petitioner's challenge to the handwritten note on the spouse-removal form. When the form itself was admitted into evidence, petitioner's attorney expressly stated that he had no objection. When the ALJ asked the City who authored the handwritten note, however, the City responded that the note was written by "someone" in the BMO. Petitioner's counsel objected, arguing that "that is the worst form of hearsay." The ALJ did not rule on the objection but, rather, went on to question why the City would have every relevant form except for the form removing Sumaya from petitioner's benefits. *King v. Paul J. Krez Co.*, 323 Ill. App. 3d 532, 534 (2001) ("An alleged error is not preserved for review if the trial court fails to rule upon it."). Thus, not only did petitioner fail to obtain a ruling on his objection, but the record does not show that the ALJ ultimately considered the handwritten notation. Petitioner argues the ALJ's statement that the form to remove petitioner's spouse "shows that that's the date on which he attempted to delete [Sumaya]" demonstrates that the ALJ considered the handwritten notation. We disagree. At best, the ALJ's statement accurately reflects that the box for deleting a spouse was checked and the date on the form was listed as October 28, 2005. Even assuming the ALJ considered the written notation's suggestion that petitioner had not previously attempted to remove Sumaya from his benefits, the notation would have been cumulative of Landoch's affidavit, which petitioner has not shown to be incompetent or improperly admitted into evidence. Accordingly, any error was harmless. See *Sudzus v. Department of Employment Security*, 393 Ill. App. 3d 814, 828 (2009) (where sufficient competent evidence supports an administrative decision, the administration's improper admission of hearsay does not constitute prejudicial error).

¶ 16    Next, petitioner asserts that the ALJ improperly shifted the burden of proof from the City to petitioner. The City bears the burden of showing a violation. City of Chicago General Rules and Regulations § 9.2 (eff. July 14, 1997). With that said, "[i]n general, the case may be presented via a City representative, live sworn testimony *and/or by sworn signed prima facie documentation*." (Emphasis added.) City of Chicago General Rules and Regulations § 9.2 (eff. July 14, 1997). In addition, the City must prove by the preponderance of the evidence that a violation exists. City of Chicago General Rules and Regulations § 8.7 (eff. July 14, 1997); Chicago Municipal Code § 2-14-076 (amended Apr. 29, 1998). If the ALJ determines that the City has provided sufficient evidence for the case to move forward, those allegations may be contested and defenses may be presented. City of Chicago General Rules and Regulations § 9.3 (eff. July 14, 1997).

¶ 17    Petitioner argues that the City failed to present any witnesses from the BMO who could be cross-examined regarding the BMO's procedures for handling petitioner's documents. To

the extent petitioner has suggested below and on appeal that the City presented no "witness" or "testimony," we note that petitioner's definition of these terms is unduly narrow. "Testimony" is "[e]vidence that a competent witness under oath or affirmation gives at trial *or in an affidavit* or deposition." (Emphasis added.) Black's Law Dictionary 1613 (9th ed. 2009). Similarly, a "witness" is "[o]ne who gives testimony under oath or affirmation (1) in person, (2) by oral or written deposition, *or* (3) *by affidavit*." (Emphases added.) Black's Law Dictionary 1740 (9th ed. 2009). As stated, the City was permitted to, and did, present evidence through Lochner's affidavit. In addition, petitioner was entitled to invoke his right to cross-examine that witness by requesting that the ALJ subpoena her. Thus, the record does not support his assertion that the City failed to present any witnesses that *could* be cross-examined. Although petitioner had no duty to cross-examine Lochner, petitioner was required to use proper administrative procedures if he chose to do so. It does not follow that the City failed to present proof of a violation by the preponderance of the evidence merely by relying on sworn, signed *prima facie* documentation. Accordingly, petitioner has not shown that the ALJ improperly shifted the burden to him merely because administrative rules required him to request a subpoena in order to cross-examine the City's witness.

¶ 18    Finally, petitioner asserts that the ALJ erroneously determined that he violated the Chicago Municipal Code by failing to pay a debt owed to the City. Chicago Municipal Code § 1-20-090 (amended July 21, 2004) ("The failure to pay any debt due [to the City] *** after the period granted for payment has expired *** shall constitute a violation of this Code."). Petitioner challenges the ALJ's finding that he failed to promptly inform the City of his divorce after the judgment was entered. An agency's factual findings are given substantial deference and may be reversed only if they are against the manifest weight of the evidence. *Kouzoukas v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 234 Ill. 2d 446, 463 (2009). An administrative agency's factual findings are against the manifest weight of the evidence only where the opposite conclusion is clearly evident and the mere fact that an opposite conclusion is reasonable will not justify reversal. *Wolin v. Department of Financial & Professional Regulation*, 2012 IL App (1st) 112113, ¶ 19. It is the administrative agency's responsibility to weigh the evidence and determine the credibility of the witnesses. *Pesoli v. Department of Employment Security*, 2012 IL App (1st) 111835, ¶ 26. Furthermore, the agency may draw reasonable inferences from the evidence. *Young-Gibson v. Board of Education of the City of Chicago*, 2011 IL App (1st) 103804, ¶ 56.

¶ 19    Here, the City presented the affidavit of Landoch, who stated that petitioner did not notify the BMO of his divorce until October 28, 2005, well after the divorce, in violation of the handbook. We cannot agree with petitioner's suggestion that this evidence was overly vague. *Cf. Walsh v. Board of Fire & Police Commissioners*, 96 Ill. 2d 101, 108 (1983) (where vague psychiatric evidence was presented, the administrative agency's decision to discharge an officer was required to be vacated). In addition, although petitioner contends Landoch did not work at the BMO at any relevant time, the record does not reveal when she was employed by the City. More importantly, Landoch purported to testify to the absence of the requisite spouse-removal form as a keeper of business records, not as an individual with personal knowledge. In addition, it was the absence of the spouse-removal form from the BMO's records, in contrast to the presence of all other documents, that led the ALJ to find

that petitioner did not file it. This inference was entirely reasonable. Accordingly, Landoch's alleged lack of personal knowledge has little relevance to the court's factual finding in this case.

¶ 20    Petitioner also argues that the City's handbook and enrollment forms were inconsistent regarding whether he was suppose to remove his spouse through the form or through an automated phone system. Petitioner's contention would be more persuasive, however, had he testified that he was actually confused regarding how to remove Sumaya from his plan. On the contrary, petitioner testified that he knew that he had to submit a form to delete Sumaya and did so promptly. Despite his testimony, the ALJ apparently found petitioner's testimony was not credible. Petitioner further argues that his testimony was corroborated by circumstantial evidence that he obtained certified documentation of his divorce and remarriage, demonstrating that he was not attempting to hide his divorce from the City. Nonetheless, the City has asserted only that petitioner failed to report his divorce, whether by oversight or otherwise, not that he deliberately hid it in order for Sumaya to continue receiving coverage. Similarly, petitioner argues that his motivation for obtaining the certified documentation was clearly to satisfy the BMO's formality requirements. Even if the ALJ agreed that this was petitioner's intention, the ALJ was still entitled to find that petitioner failed to follow through by submitting the required documentation to the BMO. Accordingly, we find the ALJ's decision was not against the manifest weight of the evidence.

¶ 21    For the foregoing reasons, we affirm the judgment of the circuit court and the DOAH.

¶ 22    Affirmed.