NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210456-U

NO. 4-21-0456

IN THE APPELLATE COURT

FILED
August 1, 2022
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| BRIAN HARGARTEN, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| GALEN DELLINGER, JOSHUA SIMMS, and | ) | No. 18MR791 |
| AMY BURLE, | ) | |
| Defendants-Appellees. | ) | Honorable |
| | ) | Chris Perrin, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Turner and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Plaintiff failed to establish a due process violation in the prison disciplinary
proceedings that resulted in the revocation of six months of good-conduct credits.

¶ 2    Plaintiff, Brian Hargarten, an inmate in the custody of the Illinois Department of

Corrections (DOC), filed a complaint against defendants, officers of DOC, seeking a common

law writ of *certiorari*. Plaintiff alleged defendants violated his due process rights in the

disciplinary proceedings that resulted, in part, in the revocation of six months of good-conduct

credits. Defendants answered the complaint by filing the administrative record of the underlying

proceedings. After reviewing the record, the trial court denied plaintiff's complaint and quashed

the writ.

¶ 3        Plaintiff appeals, arguing the court erred in denying his complaint and quashing the writ because he established a due process violation based on a denial of an opportunity to (1) appear before an impartial tribunal and (2) present documentary evidence at the disciplinary hearing. We affirm.

¶ 4                                I. BACKGROUND

¶ 5        In April 2018, plaintiff was served with a disciplinary report alleging he had violated DOC regulation 105, "Dangerous Disturbances," and regulation 205, "Security Threat Group or Unauthorized Organizational Activity." See 20 Ill. Adm. Code 504.Appendix A (Nos. 105, 205) (2017). According to the disciplinary report, plaintiff "participated in the dangerous disturbance that took place in the North Administrative Detention Unit at Pontiac Correctional Center involving more than 50 [o]ffenders." The report further alleged that the dangerous disturbance "caused for the Institution to be placed on a Level 1 lockdown and [a state-wide] Tactical Team to report to [the prison]. [Plaintiff] *** disobeyed several direct orders to be mechanically restrained during the dangerous disturbance[,] *** demonstrating [his] involvement in this unauthorized organizational activity ***."

¶ 6        Plaintiff appeared before the adjustment committee on April 24, 2018. Defendant Dellinger was the chairperson, and defendant Simms was a committee member. Plaintiff pleaded not guilty and submitted a written statement alleging the committee lacked impartiality because defendant Dellinger had told plaintiff "the committee had been directed by higher-up prison authorities to find [him] guilty and to revoke good conduct credits *** [r]egardless of any exculpatory documentary evidence [plaintiff] may have produced." Plaintiff also requested the surveillance footage of the incident to demonstrate he did not participate in the dangerous

disturbance. The committee denied his request for the surveillance footage without providing an explanation for the denial.

¶ 7    Plaintiff was served with the adjustment committee's final summary report on May 8, 2018. The committee found plaintiff guilty and recommended, in part, the revocation of six months of good-conduct credits. The prison's chief administrative officer concurred with the committee's recommendation.

¶ 8    Plaintiff administratively appealed the committee's decision by filing a grievance, arguing the adjustment committee lacked impartiality and violated his due process right to present documentary evidence. The grievance officer recommended the grievance be denied, and the chief administrative officer concurred with the recommendation. Plaintiff then appealed to DOC's director, and the appeal was referred to the administrative review board. The administrative review board, through defendant Burle, recommended the grievance be denied, and DOC's director concurred.

¶ 9    Having exhausted his administrative remedies, plaintiff filed the instant complaint for a common law writ of *certiorari* in the trial court. Plaintiff argued his due process rights were violated because the adjustment committee lacked impartiality and denied his request to present video evidence without providing an explanation for the denial. In January 2020, the court entered an order directing defendants to file the record of the disciplinary proceedings and provide the court with the requested video evidence for an *in camera* inspection. A January 2021 docket entry indicates the court was "in receipt of the adjustment committee record as well as the video evidence."

¶ 10        On July 21, 2021, the court entered a written order denying plaintiff's complaint and quashing the writ. The court concluded that the record "contains sufficient evidence to support the decision of the Adjustment Committee."

¶ 11        This appeal followed.

¶ 12                        II. ANALYSIS

¶ 13        Plaintiff argues the trial court erred in denying his complaint and quashing the writ because he established a due process violation based on a denial of an opportunity to (1) appear before an impartial adjustment committee and (2) present documentary evidence at the disciplinary hearing.

¶ 14             A. Common Law Writ of *Certiorari* and Standard of Review

¶ 15        "A common-law writ of *certiorari* is the general method for obtaining circuit court review of administrative actions when the act conferring power on the agency does not expressly adopt the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2014)) and the act provides for no other form of review." *Fillmore v. Taylor*, 2019 IL 122626, ¶ 67. "The purpose of the writ was, and is, to have the entire record of the inferior tribunal brought before the court to determine, from the record alone, whether that body proceeded according to the applicable law." *Stratton v. Wenona Community Unit District No. 1*, 133 Ill. 2d 413, 427 (1990). "If the circuit court, on the return of the writ, finds from the record that the inferior tribunal proceeded according to law, the writ is quashed; however, if the proceedings are not in compliance with the law, the judgment and proceedings shown by the return will be quashed." *Id.*

¶ 16        Prisoners have a liberty interest in a shortened sentence resulting from the application of good-conduct credits. See *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974).

Accordingly, good-conduct credits cannot be revoked through prison disciplinary proceedings "without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment." *Ponte v. Real*, 471 U.S. 491, 495 (1985). However, because prison disciplinary proceedings differ from a criminal prosecution, "the full panoply of rights due a defendant in such proceedings does not apply." (Internal quotation marks omitted.) *Id.* Instead, a prisoner facing possible revocation of good-conduct credits is entitled only to "the due process minima outlined in *Wolff*" (*id.*)—*i.e.*, the prisoner "must receive (1) advance written notice of the disciplinary charges, (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense, and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action." *Fillmore*, 2019 IL 122626, ¶ 57 (citing *Wolff*, 418 U.S. at 563-67). In addition, prisoners have a "due process right to appear before a disciplinary committee composed of impartial individuals ***." *Id.* ¶ 65 (citing *Wolff*, 418 U.S. at 570-71).

¶ 17 "The standards of review under a common law writ of *certiorari* are essentially the same as those under the Administrative Review Law." *Hanrahan v. Williams*, 174 Ill. 2d 268, 272 (1996). "A claim that an administrative proceeding violated an individual's right to due process presents a question of law and, therefore, is subject to *de novo* review." *Wolin v. Department of Financial and Professional Regulation*, 2012 IL App (1st) 112113, ¶ 25.

¶ 18                    B. Claimed Due Process Violation
                        Based on a Lack of Impartiality

¶ 19 Plaintiff first argues he established a due process violation on the basis he was denied an opportunity to appear before an impartial adjustment committee. Specifically, plaintiff asserts defendant Dellinger, who served as the committee's chairperson, told him "the committee had been directed by higher-up prison authorities to find [him] guilty and to revoke good conduct

credits *** [r]egardless of any exculpatory documentary evidence [plaintiff] may have produced." Plaintiff cites to *Epstein v. Lane*, 189 Ill. App. 3d 63 (1989), in support of his argument.

¶ 20        In *Epstein*, the plaintiff was convicted of escaping from DOC custody and, in a separate prison disciplinary proceeding, was also found guilty of several DOC violations, including escape, which resulted in the loss of good-conduct credits. *Id.* at 63-64. The plaintiff thereafter filed a complaint in the trial court alleging he was denied his due process right to an impartial hearing because "his prison counselor had initiated the criminal escape charge against him, had testified against him before the grand jury which indicted him on that charge, then had served as the chairman of the hearing committee which revoked his good-time credit." *Id.* at 64. The trial court dismissed the complaint, but the appellate court reversed, finding the plaintiff had stated a cause of action. *Id.* at 65-66. In doing so, the *Epstein* court noted that "[d]ue process in the context of a prison disciplinary proceeding prohibits those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role in the circumstances underlying the charge, from sitting on the disciplinary body." *Id.* at 65. Thus, the *Epstein* court reasoned, because the plaintiff's counselor initiated the criminal escape charge against him and testified before the grand jury, the counselor "played a substantial part in the circumstances underlying the escape charge that was before the committee" and should have been prohibited from sitting on the committee. *Id.* at 65-66.

¶ 21        Here, plaintiff's argument that the adjustment committee lacked impartiality is based solely on his conclusory assertion that defendant Dellinger, who served as the committee's chairperson, told him "the committee had been directed by higher-up prison authorities to find [him] guilty and to revoke good conduct credits *** [r]egardless of any exculpatory

documentary evidence [plaintiff] may have produced." However, plaintiff makes no argument that Dellinger or Simms participated in any proceedings which predated the charges that were before the committee. Unlike in *Epstein*, plaintiff does not contend that Dellinger or Simms initiated the charges against him or testified against him in any proceeding. Accordingly, we find plaintiff's reliance on *Epstein* unpersuasive and we reject his argument.

¶ 22　　　　　　　　　C. Claimed Due Process Violation Based on the
Denial of an Opportunity to Present Documentary Evidence

¶ 23　　　　　Plaintiff next argues he established a due process violation on the basis he was denied an opportunity to present documentary evidence at the disciplinary hearing in the form of the surveillance tape of the incident. Plaintiff contends the surveillance footage would have proven he did not participate in the dangerous disturbance. Defendants argue plaintiff forfeited this argument by failing to comply with Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020). Alternatively, defendants argue plaintiff failed to establish a due process violation on this basis because he did not demonstrate that he suffered prejudice.

¶ 24　　　　　As an initial matter, we agree with defendants that plaintiff has forfeited his argument by failing to comply with Rule 341(h)(7) (eff. Oct. 1, 2020), which provides, in part, that the argument section of an appellant's brief must include "the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Here, however, plaintiff's argument section includes only the conclusory assertion that the surveillance footage "would have exonerated [plaintiff] of the offender disciplinary report," but it lacks citation to any authority or the pages of the record relied on. Thus, we agree plaintiff has forfeited his argument. See, *e.g.*, *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises*, 2013 IL 115106, ¶ 56 ("Failure to comply with [Rule 341's] requirements results in forfeiture."). Nonetheless, we will address plaintiff's argument, as "forfeiture is a limitation on

the parties and not on the appellate court." *Jill Knowles Enterprises, Inc. v. Dunkin*, 2017 IL App (2d) 160811, ¶ 22.

¶ 25 The right to call witnesses and present documentary evidence at a prison disciplinary hearing is limited in that "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile documentary evidence." *Wolff*, 418 U.S. at 566. Although prison officials have the discretion to refuse inmate requests, they still must explain, "in a limited manner," the reason for the refusal. *Ponte*, 471 U.S. at 497. "[T]hey may do so either by making the explanation a part of the 'administrative record' in the disciplinary proceeding, or by presenting testimony in court if the deprivation of a 'liberty' interest is challenged because of that claimed defect in the hearing." *Id.* "In other words, the prison officials may choose to explain their decision at the hearing, or they may choose to explain it 'later.' " *Id.* "[S]o long as the reasons are logically related to preventing undue hazards to 'institutional safety or correctional goals,' the explanation should meet the due process requirements as outlined in *Wolff*." *Id.*

¶ 26 Here, it is undisputed that defendants denied plaintiff's request to present the surveillance footage without providing an explanation. However, as noted by defendants, this court will not find a due process violation absent a showing of prejudice, and plaintiff fails to point to anything in the record demonstrating he suffered prejudice. See, *e.g.*, *Gonzalez v. Pollution Control Board*, 2011 IL App (1st) 093021, ¶ 42 ("A court will find a due process violation only if there is a showing of prejudice."). The record shows defendants submitted the surveillance footage to the trial court for an *in camera* inspection. After reviewing the administrative record, the court entered a written order finding there was "sufficient evidence to

support the decision of the Adjustment Committee ***." Thus, it appears that, contrary to

plaintiff's assertion, the surveillance footage did not constitute exculpatory evidence. Moreover,

the surveillance footage is not a part of the record on appeal and, as a result, we must presume

the trial court's order conformed with the law. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92

(1984) ("[A]n appellant has the burden to present a sufficiently complete record of the

proceedings *** to support a claim of error, and in the absence of such a record on appeal, it will

be presumed that the order entered by the trial court was in conformity with law and had a

sufficient factual basis."). Accordingly, we reject plaintiff's argument.

¶ 27                                        III. CONCLUSION

¶ 28            For the reasons stated, we affirm the trial court's judgment.

¶ 29            Affirmed.